[Civ. No. 23968. Second Dist., Div. Three. Apr. 21, 1960.]

ROBERT BEAMON, Appellant, v. DEPARTMENT OF
MOTOR VEHICLES, Respondent.

202

Arthur Shivell for Appellant.

Stanley Mosk, Attorney General, and Warren H. Deering, Deputy Attorney General, for Respondent.

VALLÉE, J.—Appeal by petitioner from a judgment denying his petition for a writ of mandamus to compel the Department of Motor Vehicles to set aside and expunge from its records its order revoking his motor vehicle operator's license. The appeal is on the clerk's transcript consisting of the judgment roll.

On May 21, 1957, the department mailed to petitioner a notice of a hearing to be held before it for the suspension or revocation of his operator's license. Petitioner did not request a formal hearing, and on June 25, 1957, an informal hearing was held before a referee. Petitioner appeared at the hearing. Evidence was introduced; and petitioner's driving record, shown by the department's records, was considered. On June 27, 1957, the referee rendered his report.

The report showed: at the time of the hearing petitioner was 23 years of age, married, the father of one child, and had been a carpenter for 3½ years; he had been driving 6½ years, all of it in California; he drove a total of 30,000 to 40,000 miles (a year, apparently), 75 per cent of which was for business purposes. The report stated his driving record as follows: past 12 months, 9 convictions and one accident; past 24 months, 9 convictions and one accident; past 36 months, 13 convictions and one accident.

The report concluded with the comments and findings set

out in the margin.[1] The referee recommended revocation of petitioner's operator's license.

On July 29, 1957, the department entered its order revoking petitioner's operator's license, effective August 2, 1957. On October 7, 1958, mandamus was sought in the superior court. On March 9, 1959, the cause was heard on the pleadings which included the referee's report plus the testimony of plaintiff. Plaintiff's testimony is not in the record. The court found the facts as stated, and concluded: the department did not act arbitrarily, capriciously, or unreasonably or without just cause, and did not exceed its jurisdiction or abuse its discretion; it afforded petitioner a fair hearing; it proceeded at all times in compliance with the provisions of the Vehicle Code; its decision revoking petitioner's operator's license was supported by the weight of the evidence; the provisions of the Vehicle Code relating to the suspension and revocation of motor vehicle operators' licenses under which the department acted are constitutional, both on the face thereof and as applied to petitioner. The judgment denied the writ.

Our decision is governed by the provisions of the Vehicle Code with respect to the power of the department to suspend

---

[1]"In reviewing the file of Mr. Beamon, accumulated since age eighteen, a period of five years, it is noted that the record show[s]:

"Citations: 22
Violations: 30
Fines: $250
Bail Forfeitures: $44
Days in jail: 5
Accidents: 5
Traffic School
Written contacts: 6
Personal " 4
Did not appear 4
Placed on probation: 10-20-53
Revoked: 7-26-54
Reinstated: 7-26-55

"Department requested by Judge, in 1954, to 'please get this man off road.'

"Subject stated that tickets have decreased, that his citations were due to negligence. Of the 332.2 (4-17-56) and other similar violations he stated that on some of these occasions it was necessary that he drive. The out of state violations of 10-4-56 he claimed he knew nothing about since he had never been to North Carolina and that he had not been out of this state during 1956.

"It is evident from the records that this department has spent much time and effort; has been patient and considerate in trying to cause Mr. Beamon to drive in a violation-free manner. His defense of the record offers nothing to indicate further delay of strong action at this time. This has been pointed out to him.

"FINDINGS: That subject is a Negligent Operator. Support for incompetence not apparent.

"RECOMMEND: Revocation."

or revoke the privilege of any person to operate a motor vehicle upon the highway after notice and hearing, as they read in 1957.[2] We are not concerned with the provisions which made it mandatory on the department to suspend or revoke the privilege of any person to operate a motor vehicle upon the highway on receipt of a record showing he had been convicted of certain public offenses. (§§ 304, 305, 307.) In such cases the facts have already been determined in the criminal proceeding. Nor are we concerned with the question whether the department had the power to suspend or revoke the privilege in a case in which a court had acted on the question.

It is petitioner's contention that the provisions of the Vehicle Code under which the department revoked his operator's license delegated judicial and legislative power to the department in violation of the state Constitution. There is no merit in this contention.

 It is well established that state-wide agencies empowered to revoke licenses, for cause defined by law, are not exercising judicial power as that phrase is used in the Constitution conferring judicial power on the courts; and statutes creating such agencies and conferring upon them such powers are constitutional. (*Suckow* v. *Alderson*, 182 Cal. 247, 250 [187 P. 965]; *Dominguez Land Corp.* v. *Daugherty*, 196 Cal. 453, 466 [238 P. 697, 44 A.L.R. 1].) ██ It was expressly held in *Keck* v. *Superior Court*, 109 Cal.App. 251 [293 P. 128], that the Legislature, by empowering officers of the department of motor vehicles to determine whether a driver's license shall be revoked, does not confer judicial power upon executive officers.

██ "The delegation of an absolute legislative discretion to an administrative body is not proper, but if the delegating statute establishes an ascertainable standard to guide the administrative agents no objection can properly be made to it." (*Wotton* v. *Bush*, 41 Cal.2d 460, 468 [261 P.2d 256].) ██ The carefully detailed provisions of the Vehicle Code under which the department acted refute any implication of unlawful delegation of legislative power to the department. Legislation on the subject of operators' and chauffeurs' licenses at the time of the investigation and revocation of petitioner's operator's license constituted a complete division of the Vehicle Code. (Div. IV, chaps. 1-6, §§ 250-339.) The

---

[2]The section references to the Vehicle Code are to the sections as they were numbered prior to September 18, 1959. (Stat. 1959, ch. 3, p. 1523.)

applicable sections provided a complete and comprehensive guide for departmental action.

. Section 306 provided that the department might revoke a license upon any of the grounds which authorized the refusal to issue a license. Section 271 stated the grounds on which the department might refuse to issue a license. One of these grounds permitted the department to refuse to issue a license if it determined that the applicant was a negligent or incompetent operator of a motor vehicle. (§ 271, subd. (e).) As a guide in the determination of whether a person was a "negligent operator," section 271.2[3] established a point-count system to be used in evaluating the traffic record of the person. If his record totaled a specified minimum number of points for a specified period of time, the statute directed that he be prima facie presumed to be a negligent operator.

On receipt of information or on a showing by its records of certain enumerated conditions, the department was authorized by section 314, subdivision (a), to conduct an investigation to determine whether the license of any person should be suspended, revoked, or restricted. Subsection (3) of section 314, subdivision (a), authorized such action when the information received or departmental records showed "that the licensee is a reckless, negligent or incompetent driver of a motor vehicle." Section 314, subdivision (b), authorized the department to require the reexamination of the licensee in the event that its information or records indicated any of the enumerated conditions.

Petitioner specifically attacks section 314[4] as an unconstitutional delegation to the department of the power to designate what acts constituted violation of that section for which penalties might be imposed, power to set the penalties, and the power to impose them. The attack is untenable. The

---

[3]Section 271.2 read: " 'NEGLIGENT OPERATOR' DEFINED. Any person who has been convicted on four or more occasions in a consecutive period of 12 months, or six or more occasions within a consecutive period of 24 months, or eight or more occasions within a consecutive period of 36 months, of violations of the provisions of the Vehicle Code involving the safe operation of vehicles on the highway and which are by law required to be reported to the department, shall be prima facie presumed to be 'a negligent operator of a motor vehicle.' In determining the above number of convictions any conviction of Sections 332, 481, 483, or 505 of this code shall be counted as two convictions. Any accident in which the operator is deemed by the department to be responsible shall be counted the same as one conviction.' "

[4]Section 314 read: " (a) The department may conduct an investigation to determine whether the license of any person should be suspended or revoked or whether restrictions or other conditions should be imposed and

statute merely authorized the department upon receipt of certain information or showing of its records to conduct an investigation to determine whether there were grounds for suspension, revocation, or the imposition of conditions or restrictions on the licensee, and permitted the department to reexamine the licensee in any such event. The grounds for suspension and revocation were contained in other sections of the code. (See §§ 269, 271, 271.2, 303.1, 304, 305, 305.1, 306, 307, 308, 308.1.) The authority to initiate an investigation or require reexamination of the licensee is not the authority to state what acts violate the law; the initiation of an investigation or the requirement of reexamination is not the imposition of a penalty. It clearly appears that section 314 was intended to detail the internal procedure to be followed by the department and must be read with other sections which state grounds for suspension or revocation.

Petitioner complains that under the authority of section 314, subdivisions (a) (1) and (a) (2), the department could and did take action to suspend, revoke, or impose conditions on the license of an operator where he was free from fault. There is nothing in the record to support this claim.

 Section 314, subdivision (c), directed: "In applying the provisions of this section the department shall give due consideration to the more frequent use of motor vehicles by chauffeurs." Petitioner contends this subsection denied him equal protection of the law. He argues that there is no reasonable distinction between a licensee in his position who was necessarily required in his occupation to drive many times the

---

may make such investigation upon receiving information or upon a showing by its records:

"(1) That the licensee has been involved as a driver in any accident causing death or personal injury or serious damage to property.

"(2) That the licensee has been involved in three or more accidents within a period of twelve consecutive months.

"(3) That the licensee is a reckless, negligent or incompetent driver of a motor vehicle.

"(4) That the licensee has permitted an unlawful or fraudulent use of such license.

"(5) That any ground exists for which a license might be refused.

"(b) In any such event the department may require the reexamination of the licensee, and shall give 10 days'. written notice of the time and place thereof. In the event the licensee refuses or fails to submit to such reexamination, the department may peremptorily suspend the license of such person until such time as the licensee shall have submitted to such reexamination. Such suspension shall be effective upon notice.

"(c) In applying the provisions of this section the department shall give due consideration to the more frequent use of motor vehicles by chauffeurs."

number of miles which the Legislature contemplated as the average amount of miles driven by individuals for pleasure, and one who was employed by others for the principal purpose of driving a motor vehicle. (Veh. Code, § 71.)

██ "A law is general when it applies equally to all persons embraced in a class founded on some natural, intrinsic, or constitutional distinction. ██ It is special if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right on a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. [Citation.] ██ The prohibition against special legislation does not preclude classification, but only requires that the classification be reasonable. [Citation.] ██ A legislative determination as to what is a sufficient distinction to warrant a classification will not be overthrown unless it is palpably arbitrary. [Citation.] ██ It must be clear beyond reasonable doubt that no sound reason for the classification exists. [Citation.]" (*Sawyer* v. *Barbour*, 142 Cal.App. 2d 827, 838 [300 P.2d 187].)

██ Classifications of persons authorized to operate motor vehicles have been upheld with respect to minors (*Buelke* v. *Levenstadt*, 190 Cal. 684, 688 [214 P. 42]); financial responsibility of operators (*Watson* v. *Division of Motor Vehicles*, 212 Cal. 279, 282 [298 P. 481]); chauffeurs and operators (*In the Matter of Application of Stork*, 167 Cal. 294, 295 [139 P. 684]). The latter case, upholding the validity of a statute requiring chauffeurs to pay a license fee but exempting all other drivers from payment, states in respect to the differences between the two classes of drivers (p. 296):

"Of first importance in this is the fact that the chauffeur offers his services to the public and is frequently a carrier of the general public. These circumstances put professional chauffeurs in a class by themselves and entitle the public to receive the protection which the legislature may· accord in making provision for the competency and carefulness of such drivers. The chauffeur, generally speaking, is not driving his own car. He is intrusted with the property of others. In the nature of things a different amount of care will ordinarily be exercised by such a driver than will be exercised by the man driving his own car and risking his own property. Many other considerations of like nature will readily present themselves, but enough has been said to show that there are sound, just, and valid reasons for the classification adopted."

Section 314, subdivision (c), was a general, not a special law. It had a rational foundation, and did not contravene any of the provisions of the Constitution assigned by petitioner.

 Petitioner was not denied due process. Acting in accord with the provisions of section 315, the department at the conclusion of its investigation gave notice to petitioner it was considering suspending or revoking his operator's license, and of his right to a hearing. Section 316, subdivision (c), provided that failure of the licensee to respond to the notice should be deemed a waiver of the right to a hearing, but the department might grant either an informal or formal hearing. Petitioner failed to request a formal hearing and the department held an informal hearing presided over by a referee. He appeared and testified. Due process of law was satisfied.

 Petitioner also urges that the shifting of the burden of proof by creation of the presumption is a denial of due process. Due process requires only that there be a rational connection between the facts proved and the fact presumed. (*People* v. *Wells,* 33 Cal.2d 330, 346 [202 P.2d 52].) There is no doubt that a record reflecting repeated violations of traffic laws or accidents or both, attributable to the fault of a driver, leads to a rational conclusion that he is a negligent operator.

 Petitioner urges that the department should not have received and considered evidence of prior traffic violations which terminated in disciplinary action against him.

Section 317, subdivision (b), stated: "In connection with any informal hearing, the department may consider any of the records or reports referred to in Section 318(c)." Section 318, subdivision (c) provided that the department shall consider its official records and may receive sworn testimony. Section 320 listed the records to be kept by the department: every application for a license received by it; all applications denied; all applications granted; the name of every licensee whose license has been suspended or revoked by the department or by a court, the reasons therefor, and the period of suspension or revocation; all accident reports and abstracts of court records of convictions received under the act. Under section 317 petitioner at the hearing had the right to present evidence to controvert the information obtained from the files of the department, and to submit the questions of fact for determination by the department.

Petitioner says this procedure inflicted double penalties for the same acts and offenses. ▮ The suspension or revocation of a license is not penal; its purpose is to make the streets and highways safe by protecting the public from incompetence, lack of care, and wilful disregard of the rights of others by drivers. (*Cf. Murrill* v. *State Board of Accountancy*, 97 Cal. App.2d 709, 711 [218 P.2d 569]; *Brodsky* v. *California State Board of Pharmacy*, 173 Cal.App.2d 680, 688 [344 P.2d 68].)

▮ The fact that petitioner may suffer inconvenience and even economic loss because he has been denied a license does not make the remedial action of the department the imposition of punishment for past offenses. In a determination of his qualifications as a driver, the prior traffic record of a driver, including prior suspension, revocation, and restriction of his license as well as convictions of traffic violations, is relevant and material evidence of his knowledge of and compliance with the vehicle laws and his ability to exercise ordinary and reasonable care in operating a motor vehicle.

▮ Petitioner contends the Vehicle Code did not permit consideration by the department of offenses committed in a foreign state; and that there was no clear proof he had been convicted of an offense in a foreign state. Since the referee reported that all of petitioner's driving was in California, it is obvious he did not find petitioner had committed any offense in a foreign state. ▮ Petitioner also contends the department did not consider his economic need to drive in the conduct of his occupation, or the probable amount of driving he would be required to do for that purpose. Since the referee reported that petitioner drove a total of 30,000 to 40,000 miles a year, 75 per cent of which was for business purposes, it is obvious the point is not well taken. ▮ He also contends there was insufficient proof he had committed certain offenses in this state, and that the hearing officer acted arbitrarily in failing to give any weight to evidence which he submitted. Since this is a judgment roll appeal and neither the evidence heard by the referee nor that heard by the trial court is before us, these points may not be considered.

▮ Error is never presumed but must be affirmatively shown, and the burden is on the appellant to present a record showing it. (3 Cal.Jur.2d 781, § 260.) No such record is here.

Affirmed.

Shinn, P. J., concurred.

Ford, J., did not participate.